1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CHARLES BINGLEY FRYAR,                      Case No.  1:21-cv-00918-CDB

12                     Plaintiff,                 ORDER REMANDING ACTION FOR
                                                  FURTHER PROCEEDINGS UNDER
13          v.                                    SENTENCE FOUR OF 42 U.S.C. § 405(g)

14    COMMISSIONER OF SOCIAL                       (Docs. 17-19)
      SECURITY,
15
                      Defendant.
16

17

18          Charles Bingley Fryar ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

20   disability insurance benefits under the Social Security Act.  (Doc. No. 1).  The matter is currently

21   before the Court on the certified administrative record (Doc. 10) and the parties' briefs, which

22   were submitted without oral argument.  (Docs. 17-19).[1]  Plaintiff asserts the Administrative Law

23   Judge ("ALJ") erred in the evaluation of his pain testimony and failed to consider a closed period

24   of disability benefits.  (Doc. 17 at 31-39).  Plaintiff requests the decision of the Commissioner be

25   vacated and the case be remanded for further proceedings to allow the Commissioner the

26   opportunity to properly evaluate his pain testimony and if necessary, address the issue of a closed

27   ───────────────

28          [1]  Both parties have consented to the jurisdiction of a magistrate judge for all proceedings
     in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 9).

1  period of benefits.  *Id*. at 39-40.

2  ## I.   BACKGROUND

3  ### A. Administrative Proceedings

4  On March 2, 2018, Plaintiff protectively applied for supplemental security income

5  benefits pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.,

6  alleging a period of disability beginning on September 1, 2017.  (Administrative Record ("AR")

7  69, 177-92).  Plaintiff was 46 years old on the alleged disability onset date.  *Id*. at 68.  Plaintiff

8  claimed disability due to issues with his lower back, right elbow, right knee, and right shoulder.

9  *Id*. at 69.  The Commissioner denied Plaintiff's application initially and again on reconsideration.

10  *Id*. at 94-108, 111-16.  Plaintiff submitted a written request for a hearing by an ALJ.  *Id*. at 119-

11  21.  On February 3, 2020, Plaintiff, represented by counsel, appeared in person for a hearing held

12  before ALJ Cynthia Hale.  *Id*. at 41-67.  Vocational expert ("VE") Daniel Best also testified at the

13  hearing via telephone.  *Id*. at 41, 61-65.

14  ### B. Medical Record

15  The relevant medical record was reviewed by the Court and will be referenced below as

16  necessary to this Court's decision.

17  ### C. Hearing Testimony

18  Plaintiff testified he worked for the Merced City Scholl District from 1995 to August 29,

19  2017.  *Id*. at 44-45.  Plaintiff reported he "maintained the irrigation and backflows for 19 sites

20  which entailed a lot of digging and heavy lifting."  *Id*. at 44.  Plaintiff noted in the winter months

21  he maintained all the roofs by carrying five-gallon buckets of tar up and down ladders and

22  walking 50 to 100 yards at a time to get to the classrooms.  *Id*.

23  Plaintiff testified he had undergone seven surgeries in the last ten years.  *Id*. at 45.

24  Specifically, Plaintiff asserted he had three surgeries on his lower back, two surgeries to replace

25  his hips, his gallbladder removed, and a hernia operation.  *Id*.  Plaintiff claimed despite his

26  operations he still experiences soreness, stiffness, and a burning sensation in his lower back.  *Id*.

27  at 46.  Plaintiff also noted his hips are always sore and stiff and he has a lot of nerve pain in both

28  legs and feet.  *Id*.

1    Plaintiff testified the pain he experiences in his back and hips limits his mobility and

2    ability to stand and sit.  *Id*. at 46-49.  Plaintiff reported he was prescribed a walker and cane

3    following his surgeries.  *Id*. at 48.  Plaintiff testified he doesn't need the walker anymore but still

4    uses the cane to stop himself from falling.  *Id*.  Plaintiff stated he had fallen a couple of times in

5    the last six months because his left tends to drag and "so the cane makes [him] feel more

6    comfortable."  *Id*.  Plaintiff noted he could probably walk three-quarters of a city block before he

7    started to get back pain.  *Id*.  Plaintiff testified he can push a shopping cart and uses "the shopping

8    cart as a walker pretty much."  *Id*. at 49.  Plaintiff claimed his hip clicks a lot when he walks, and

9    it feels like their popping.  *Id*. at 46.

10   Plaintiff reported he "can stand probably three to four minutes and then [his] back starts to

11   bother [him]" and he must sit down.  *Id*.  Plaintiff also testified he gets "discomfort" from sitting.

12   *Id*. at 47.  Plaintiff stated he can probably sit in a chair for between three and five minutes before

13   it bothers his back.  *Id*.  Plaintiff noted he must shift back and forth when sitting because his hips

14   will bother him.  *Id*.

15   Plaintiff testified due to the pain in his back and hips he can only get about three hours of

16   sleep a night.  *Id*.  Plaintiff reported he could lift a gallon of milk and could comfortably lift up to

17   ten pounds.  *Id*.  Plaintiff asserted he is unable to bend, stoop, crouch, kneel, crawl, squat, climb

18   ladders, go up scaffolding, and put on socks without assistance.  *Id*. at 48-50.

19   In response to the ALJ's questions about daily activities, Plaintiff testified he wakes up at

20   about 7:30 AM and showers every day.  *Id*. at 50.  Plaintiff noted he can dress himself but it takes

21   "some effort".  *Id*. at 51.  Plaintiff stated he takes and picks up his daughter from school and visits

22   his sister in town for coffee.  *Id*. at 50.  Plaintiff noted he spends a large part of the day sitting in

23   his recliner.  *Id*.  Plaintiff testified he is unable to cook, do laundry, yardwork, and clean the

24   house, but can do his dishes and shop if he needs something.  *Id*. at 51-52.

25   Plaintiff reported he does have a valid California driver's license and can drive a vehicle.

26   *Id*. at 52.  Plaintiff claimed he can drive "short little runs here and there" but is unable to drive

27   long distances.  *Id*. at 59.  Specifically, Plaintiff asserted if he drives 20 minutes or more his back

28   starts to hurt and his legs get sore.  *Id*. at 60.

1   Plaintiff testified he fought for his job and fought for lighter-duty jobs but was told he was

2   a liability.  *Id*. at 53-54.  Plaintiff asserted he did  not think he could engage in any type of

3   fulltime employment at this time.  *Id*. at 53.  Plaintiff expressed he had an active worker's

4   compensation claim but he "[hadn't] got any results from it."  *Id*. at 55.  Plaintiff reported he had

5   difficulty getting his work to pay for his medical treatment.  *Id*.

6   When the ALJ noted Plaintiff's medical records did not show Plaintiff was having

7   problems with his back and hips following his surgeries, Plaintiff asserted he had "nothing but

8   problems."  *Id*. at 57.  Plaintiff stated he would see his hip surgeon "this month" to let him know

9   about his problems with his hips.  *Id*.  Plaintiff testified he took anti-inflammatory medicine for

10   the pain but did not take any opioids because they turned him "into not a good person."  *Id*. at 58.

11   The VE identified Plaintiff's past work as a "composite job[,] a combination of two titles"

12   a sprinkler irrigation equipment mechanic and a building maintenance repairer.  *Id*. at 62.  The

13   ALJ proffered a hypothetical to the VE of an individual with the same age, and education of the

14   Plaintiff who was limited to light work.  *Id*.  Further, this proposed individual could only

15   occasionally climb, balance, and stoop, could frequently kneel, crouch, and crawl, and could do

16   more than frequent overhead reaching with the right upper extremity.  *Id*.  The VE opined that

17   this individual could perform jobs such as cashier 2, production assembler, and a printed circuit

18   board pre-assembler.  *Id*. at 62-63.

19   The ALJ proffered a second hypothetical of an individual who could perform light

20   exertion but was unable to walk, stand, or sit beyond four hours, and would need to be able to

21   alternate between sitting and standing every 30 minutes.  *Id*. at 63.  Further, this proposed

22   individual could not climb ladders, ropes, or scaffolds, crouch, kneel, or crawl, could only

23   occasionally balance and stoop, was limited to frequent overhead reaching on the right, and

24   would avoid driving, traveling, unprotected heights, and moving machinery.  *Id*.  The VE opined

25   that this individual could work as an electronics worker and could still perform as a production

26   assembler, and a printed circuit board pre-assembler.  *Id*. at 63-64.

27   The ALJ proffered a third and fourth hypothetical of an individual who needed to take two

28   extra 15-minute breaks on a consistent basis and an individual who would leave early or be absent

1    two workdays a month on a consistent basis.  *Id.* at 64.  The VE opined, in the long term,

2    additional breaks would interrupt an individual's ability to meet and maintain work requirements,

3    and additional days off would not allow an individual to sustain competitive work.  *Id.*

4    Thereafter, Plaintiff's counsel proffered a hypothetical of an individual that was off task 10% of

5    the time.  *Id.* at 64-56.  The VE opined, that on a long-term basis, this condition would not allow

6    an individual to sustain completive work.  *Id.* at 65.

7        **D. The ALJ's Decision**

8        On September 30, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.

9    *Id.* at 20-34.  The ALJ conducted the five-step disability analysis set forth in 20 CFR 404.1520(a).

10    *Id.* at 24-25.  The ALJ found Plaintiff had not engaged in substantial gainful activity since

11    September 1, 2017, the alleged onset date (step one). *Id.* at 25.  The ALJ held Plaintiff possessed

12    the following severe impairments: degenerative disc disease of the lumbar spine with fusion at

13    L5-S1 with revision surgery, L4-S1 fusion surgery in June 2018; osteoarthritis of the hips with

14    bilateral total hip replacements, and right acromioclavicular joint degenerative joint disease (step

15    two).  *Id.* at 26.

16        Next, the ALJ determined Plaintiff did not have an impairment or combination of

17    impairments that meets or medically equals the severity of one of the listed impairments in 20

18    C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  *Id.*  The ALJ then assessed

19    Plaintiff's residual functional capacity ("RFC").  *Id.* at 26-27.  The ALJ found that Plaintiff

20    retained the RFC:

21
22        "to perform light work as defined in 20 CFR 404.1567(b) with the following
         additional limitations: the claimant can stand and walk four hours total and sit four
         hours total in an eight-hour work day.  The claimant must alternate between standing
23        and sitting every 30 minutes for a brief position change while continuing to work at
         the work station. The claimant cannot climb ladders, ropes, or scaffolds; cannot
24        crouch, kneel or crawl; can only occasionally balance and stoop; can frequently
         handle, finger, and feel; can no more than occasionally climb ramps and stairs; and
25        can frequently reach overhead on the right. The claimant must avoid driving,
         traveling, and unprotected heights and moving machinery.
26

27    *Id.*  Thereafter, the ALJ summarized Plaintiff's alleged symptoms.  *Id.* at 27.  Although the

28    ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause his

5

1  alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity,

2  persistence and limiting effects of his symptoms were not entirely consistent with the

3  medical evidence and other evidence in the record.  *Id*.

4        The ALJ noted Plaintiff underwent two back surgeries in 2014.  *Id*. at 28.  Based on his

5  review of office treatment records from an orthopedic clinic in 2017 and early-2018, the ALJ

6  noted Plaintiff "did well after [those] surgeries, but in 2017 he had increased back pain radiating

7  to the left leg."  *Id*.  The ALJ determined Plaintiff's medical records suggested Plaintiff's

8  condition improved after he received bilateral sacroiliac joint injections and lumbar

9  transforaminal epidural steroid injections in 2017.  *Id*. at 28.  The ALJ noted "[b]y January 2018[,

10  Plaintiff] felt substantially better with no leg pain and minimal back discomfort.  [Plaintiff] felt

11  that he could go back to his normal job and he was increasing his activities around the house."  *Id*.

12        The ALJ found Plaintiff reported pain in his back and lower extremities on March 21,

13  2018.  *Id*. at 28, 327.  Thereafter, Plaintiff underwent surgery on his back and two surgeries on his

14  hips in 2018.  *Id*. at 28.  Specifically, Plaintiff underwent an L4-S1 fusion surgery with removal

15  of hardware from L5-S1, and L4-5 laminectomy and facetectomy ("lumbar spine surgery") on

16  June 27, 2018.  *Id*.  On September 25, 2018, Plaintiff underwent left hip total arthroplasty surgery

17  and right hip total arthroplasty surgery on November 27, 2018.  *Id*.  The ALJ found Plaintiff's

18  medical records showed that Plaintiff experienced significant improvement in his pain and ability

19  to function in the months following his surgeries.  *Id*.  The ALJ pointed to reports that Plaintiff

20  was active, exercising, walking, denied he was in pain, and expressed an interest in returning to

21  work.  *Id*. at 28.

22        The ALJ considered the reports of Plaintiff's orthopedic surgeon Dr. Henry E. Aryan MD.

23  *Id*. at 28, 31.  In January 2018, Dr. Aryan determined it was "not unreasonable for [Plaintiff] to

24  return to full-duty work with no specific restrictions other than to avoid activities that cause

25  discomfort."  *Id*. at 28.  Following Plaintiff's lumbar spine surgery, Dr. Aryan "concluded

26  [Plaintiff] cannot bend or lift still, and he may drive once he feels comfortable."  *Id*. at 31.

27  However, the ALJ found these were temporary restrictions following Plaintiff's lumbar spine

28  surgery and were not persuasive regarding Plaintiff's permanent work restrictions.  *Id*.  In April

2019, Dr. Aryan determined that Plaintiff had no specific restrictions related to his back and was able to do full duty work with no restrictions.  *Id.*  The ALJ found this opinion persuasive based on Dr. Aryan's treatment relationship with Plaintiff as well as the significant improvement Plaintiff experienced following his lumbar spine surgery.  *Id.*  However, the ALJ found additional limitations consistent with the proposed RFC were appropriate in light of Plaintiff's chronic pain, as well as Plaintiff's hips and right shoulder impairments, which Dr. Aryan did not evaluate.  *Id.*

The ALJ considered the report of Dr. Glynn Garland MD.  *Id.* at 32.  In February 2018, Dr. Garland reviewed Plaintiff's medical history and had "no reason to disagree with Dr. Aryan regarding [Plaintiff's] fitness for returning to his preinjury job restrictions."  *Id.* at 32, 463.  The ALJ determined Dr. Garland's opinion was not persuasive as it did not account for the "substantial amount of evidence" produced later in 2018 following his report.  *Id.* at 32.

The ALJ considered the reports of Plaintiff's hip surgeon Dr. Edward Vanek MD.  *Id.* at 28.  The ALJ found Dr. Vanek's reports showed Plaintiff experienced significant improvement in his hips following surgery.  *Id.* at 28-29.  Dr. Vanek determined Plaintiff's hips had full and/or intact range of motion with normal alignment, and no deformity or tenderness.  *Id.*

The ALJ considered the report and assessment of consultative physician Dr. Joseph Serra MD.  *Id.* at 29, 31.  Dr. Serra provided a narrative opinion and a "check-box" assessment of Plaintiff's condition.  *Id.* at 31.  The ALJ found Dr. Serra's narrative opinion regarding Plaintiff's sitting, standing, and walking limitations was inconsistent with the results of the consultative examination.  *Id.*  Moreover, the ALJ determined Dr. Serra's check box assessment contained "significantly inconsistent limitations" with Plaintiff's self-reported daily activities.  *Id.*  Despite these issues, the ALJ found the rest of Dr. Serra's opinion persuasive because it was consistent with the clinical findings of Plaintiff's treating physicians, "as well as [Plaintiff's] symptomatic and functional improvement after his surgeries."  *Id.*

The ALJ considered the reports of Drs. A. Nasrabadi MD and Leslie E. Arnold MD from Disability Determination Service ("DDS"), dated April and August 2018, respectively.  *Id.* at 30.  Drs. Nasrabadi and Arnold concluded that Plaintiff could perform light exertion work.  *Id.*  The ALJ found the DDS physicians' reports were persuasive because they were consistent with

1    imaging studies and clinical examinations in Plaintiff's treatment records. *Id*. The ALJ also

2    determined that the DDS physicians' findings were consistent with the improvement that Plaintiff

3    experienced in his symptoms and physical functioning following his surgeries. *Id*. at 30-31. The

4    ALJ noted the DDS physicians did not take into consideration Plaintiff's hip surgeries. *Id*. at 31.

5    Therefore, the ALJ found that Plaintiff's capacity to stand and walk was subject to more

6    limitations than those that the DDS assessed. *Id*.

7          The ALJ considered Plaintiff's exertional activities questionnaire, dated March 29, 2018,

8    in which Plaintiff described his pain symptoms and limitations. *Id*. at 220-23. The ALJ found the

9    limitations that Plaintiff identified were not probative of his permanent or long-term abilities as

10   they did not account for the improvement Plaintiff experienced following his surgeries. *Id*. at 30.

11         The ALJ considered the reports of Dr. Stefan Elazier MD. *Id*. at 32. The ALJ found Dr.

12   Elazier assessed several work restrictions in 2017 and 2018. *Id*. The ALJ did not find these

13   restrictions persuasive, because they were intended to be temporary work restrictions and were

14   not probative of Plaintiff's permanent work capacity. *Id*. Notably, the ALJ acknowledged that in

15   July 2018, Dr. Elazier indicated Plaintiff could return to full duty with no limitations or

16   restrictions. *Id*.

17         The ALJ summarized Plaintiff's daily activities and found Plaintiff's testimony about his

18   limitations in standing, sitting, walking, and lifting was not consistent with his statements to

19   treating and examining physicians. *Id*. at 30. The ALJ acknowledged that Plaintiff's daily

20   activities may be limited to some extent due to a history of surgeries and residual pain. *Id*.

21   However, the ALJ determined Plaintiff's statements to his orthopedists, and the improvement he

22   experienced following his surgeries, supported a finding that Plaintiff's pain was not as limiting

23   as Plaintiff had testified. *Id*. The ALJ highlighted that Plaintiff's testimony that he uses a cane

24   was inconsistent with the fact that he did not use a cane during his consultative evaluation. *Id*.

25         The ALJ determined that Plaintiff was unable to perform any past relevant work (step

26   four), but could perform a significant number of other jobs in the national economy, including

27   production assembler, printed circuit board pre-assembler, and electronics worker (step five). *Id*.

28   at 32-33. The ALJ concluded Plaintiff has not been under a disability as defined in the Act. *Id*. at

1   33.

2       On April 8, 2021, the Appeals Council denied Plaintiff's request for review, making the

3   ALJ's decision the final decision of the Commissioner. *Id*. at 5-10.  Plaintiff filed this action on

4   June 10, 2021, seeking judicial review of the denial of his application for benefits.  (Doc. 1).  The

5   Commissioner lodged the administrative record on November 17, 2021.  (Doc. 10).  Plaintiff filed

6   an opening brief on February 17, 2022.  (Doc. 17).  On March 24, 2022, Defendant filed a

7   responsive brief and Plaintiff filed a reply on April 6, 2022.  (Docs. 18-19).

8                                   **II.     LEGAL STANDARD**

9              **A. The Disability Standard**

10      Disability Insurance Benefits and Supplemental Security Income are available for every

11  eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual

12  is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically

13  determinable physical or mental impairment …"[2]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)

14  (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To

15  achieve uniformity in the decision-making process, the Social Security regulations set out a five-

16  step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20

17  C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

18  Specifically, the ALJ is required to determine:

19          (1) whether a claimant engaged in substantial gainful activity during the period of
20          alleged disability, (2) whether the claimant had medically determinable "severe"
            impairments, (3) whether these impairments meet or are medically equivalent to one
21          of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4)
            whether the claimant retained the RFC to perform past relevant work and (5)
22          whether the claimant had the ability to perform other jobs existing in significant
            numbers at the national and regional level.
23

24  *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

25  on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing

26  _____

27      [2] A "physical or mental impairment" is one resulting from anatomical, physiological, or
    psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory
    diagnostic techniques.  42 U.S.C. § 423(d)(3).

28

                                              9

1    *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

2            Before making the step four determinations, the ALJ first must determine the claimant's

3    RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their

4    limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§

5    404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments,

6    including those that are not severe.  20 C.F.R. § 416.920(e); § 416.945(a)(2).  *E.g.*, *Wells v.*

7    *Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in

8    assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's

9    medically determinable impairments, whether severe or not severe.").  The RFC is not a medical

10   opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to

11   the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

12   Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

13   residual functional capacity.").

14           At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

15   other work in the national economy given the claimant's RFC, age, education, and work

16   experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use

17   either the Medical-Vocational Guidelines or rely upon the testimony of a VE.  *Lounsburry v.*

18   *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

19   Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining

20   credibility, resolving conflicts in medical testimony and for resolving ambiguities.'"  *Ford*, 950

21   F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

22           **B. Standard of Review**

23           Congress has provided that an individual may obtain judicial review of any final decision

24   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

25   determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

26   party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A

27   court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

28   legal error or are not supported by substantial evidence.  *Tackett v. Apfel*, 180 F.3d 1094, 1097

1 | (9th Cir. 1999).

2 |     "Substantial evidence is relevant evidence which, considering the record as a whole, a

3 | reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278

4 | F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

5 | 1457 (9th Cir, 1995)).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

6 | *Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, "[s]ubstantial evidence means more than a

7 | scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v.*

8 | *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

9 |     "[A] reviewing court must consider the entire record as a whole and may not affirm

10 | simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153,

11 | 1159 (9th Cir. 2012) (internal quotations and citations omitted).  "If the evidence 'is susceptible

12 | to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*,

13 | 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

14 | ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

15 | 454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

16 | nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)

17 | (quotation and citation omitted). The burden of showing that an error is not harmless "normally

18 | falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396,

19 | 409 (2009).

20 | **III.    LEGAL ISSUES**

21 |     Plaintiff asserts the ALJ improperly evaluated Plaintiff's pain testimony.  (Doc. 17 at 31-

22 | 38).  Specifically, Plaintiff argues: (1) the ALJ failed to identify which statements Plaintiff found

23 | not to be credible and link to portions of the record that undermined those statements, (2) failed to

24 | recognize that Plaintiff's pain and symptoms varied in their intensity, and (3) failed to make

25 | "sufficiently specific" findings necessary to rely on Plaintiff's daily activities as a basis for

26 | rejecting his testimony.  *Id.*  Plaintiff separately argues the ALJ erred in failing to consider a

27 | closed period of disability benefits.  *Id.* at 38-39.

28 | / / /

**IV.   DISCUSSION**

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1281). *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons").  The ALJ must make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds

---

[3] Social Security Ruling (SSR) 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character but an endeavor to "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3.

and did not arbitrarily discredit the claimant's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *F&R adopted*, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 F. App'x 595, 597 (9th Cir. 2019)).  "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Smolen*, 80 F.3d at 1284.  In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P. *Id.* [4] (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)).  *Accord Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes

---

[4] *Smolen* cites to SSR 88-13, which has since been superseded by SSR 16-3P (available at 2017 WL 5180304).  *See Amy E.S. v. Commissioner*, 2022 WL 92939, at *9 n.4 (D. Or. Jan. 10, 2022).

every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3).  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.  *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan*, 260 F.3d at 1049. *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony.  *Burch*, 400 F.3d at 680.  "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'"  *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

However, the medical evidence "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The Court of Appeals has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (quoting

*Carmickle*, 533 F.3d at 1161).  The Court of Appeals has also acknowledged that the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to" the Social Security Act.  *Molina*, 674 F.3d at 1104.

Here, the ALJ summarized Plaintiff's testimony symptoms as follows:

> The claimant alleged disability due to problems with his lower back, right elbow, right knee, and right shoulder (Exhibit 1E). The claimant testified to the following: he had three surgeries on his lower back and he had both hips replaced. He has pain, stiffness, and a burning sensation, his hips are always sore and stiff, and he has nerve pain in both legs and feet. He has pain radiating from his left hip down his left leg. He can stand for three to four minutes before he sits because his back bothers him, he can sit for three to five minutes before it bothers his back, and he can comfortably lift 10 pounds. He constantly shifts position due to his hips. The claimant testified that he uses a cane when walking, and he can walk [three-quarters] of a block. He cannot bend, stoop, crouch, kneel, crawl, squat, or climb ladders or scaffolds. He can go up one flight of stairs slowly and using the [banister]. He takes diclofenac, an anti-inflammatory medication, which seems to help him the best, but which causes drowsiness and headaches. He testified that he does not take opiate medication because it turns him into "not a good person."  (AR 27).

The ALJ acknowledged and engaged in the two-part analysis under *Treichler* (*supra*).  (AR 27). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  *Id.*  Because there was no evidence of malingering, the ALJ was required to provide "specific, clear, and convincing reasons" to properly reject Plaintiff's subjective complaints.  *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017).

Plaintiff claims the ALJ did not identify which of Plaintiff's statements she rejected. (Doc. 17 at 33).  Instead, the ALJ provided only a summary of the record in support of her finding that Plaintiff's statements were not consistent with the medical evidence and other evidence.  *Id.* (citing AR 27-30).  Plaintiff asserts that "more specificity is required before [Plaintiff's] pain and symptom testimony can be discounted."  *Id.* (citing *Brown-Hunter*, 806 F.3d at 498 [*sic*]).

In *Brown-Hunter*, the Ninth Circuit reiterated its holding in *Treichler* that it is erroneous to make a "single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

1    inconsistent with [RFC] assessment, without identifying sufficiently specific reasons for rejecting

2    the testimony supported by evidence in the case record."  806 F.3d at 493 (internal quotations

3    marks and citation omitted).  There, the ALJ "simply stated her non-credibility conclusion and

4    then summarized the medical evidence supporting her RFC determination," which "is not the sort

5    of explanation or the kind of 'specific reasons' [in order for the court] to review the ALJ's

6    decision meaningfully" to "ensure that the claimant's testimony was not arbitrarily discredited."

7    *Id*. at 494.

8            Unlike the ALJ in *Brown-Hunter*, who failed to identify the testimony she disputed, the

9    ALJ in this case summarized Plaintiff's testimony regarding his impairments, then detailed the

10   evidence—including Plaintiff's improvement with treatment, medical opinions, and daily

11   activities—that contradicted Plaintiff's testimony.  (AR 28-32). *See Guthrie v. Kijakazi*, No. 21-

12   36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (the ALJ sufficiently explained her

13   reasons for discounting Guthrie's symptom testimony, and "we can easily follow her reasoning

14   and meaningfully review those reasons.") (citing *Kaufman v. Kijakazi*, 32 F. 4th 843, 851 (9th

15   Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record"));

16   *see also Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D.

17   May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings,

18   followed a conventional organization for ALJ decision writing which is sufficiently clear for

19   judicial review).

20           The ALJ primarily relies on her finding that Plaintiff's condition improved following his

21   surgeries in 2018.  (AR 28-32).  Evidence of the effectiveness of a claimant's treatment regimen

22   may be relevant to evaluating her subjective impairment testimony.  20 C.F.R. §§

23   404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v).  However, the Ninth Circuit has held that "[c]ycles

24   of improvement and debilitating symptoms are a common occurrence, and in such circumstances,

25   it is error for an ALJ to pick out a few isolated instances of improvement over a period of months

26   or years and to treat them as a basis for concluding a claimant is capable of working."  *Garrison*,

27   759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).  Moreover,

28   "'treatment records must be viewed in light of the overall diagnostic record,' and it is error for an

1  ALJ to 'cherry-pick[]' medical evidence disfavoring a claimant instead of considering such

2  evidence in the context of the record as a whole." *Genesis T. v. Kijakazi*, No. CV 22-5360-KK,

3  2023 U.S. Dist. LEXIS 156620, at *14 (C.D. Cal. Sep. 1, 2023) (citing *Ghanim v. Colvin*, 763

4  F.3d 1154, 1164 (9th Cir. 2014)).

5          Here, the ALJ found that Plaintiff "experienced significant improvement in his pain…and

6  ability to function in the months following his surgeries" in 2018.  (AR 28).  The ALJ recognized

7  Plaintiff was walking better, becoming more active, denied pain, and expressed an interest in

8  returning to work.  *Id*.  The ALJ's findings are consistent with Plaintiff's medical record, that

9  following his surgeries in 2018, his condition improved.  *Id*. at 937, 941, 943-45, 947, 963, 993,

10  995, 1030); *see Borowick v. Kijakazi*, No. 21-36022, 2022 WL 17729249, at *1 (9th Cir. Dec. 16,

11  2022) (affirming the ALJ's decision to discount claimant's testimony, in part because the

12  claimant's fatigue improved with treatment).  Accordingly, the ALJ's recognition that Plaintiff's

13  condition had improved constitutes a clear and convincing reason to reject Plaintiff's symptom

14  allegations.

15          Plaintiff argues the ALJ failed to make sufficiently specific findings necessary to rely on

16  Plaintiff's daily activities as a basis for rejecting his testimony. *Id*. at 35-36.  An ALJ is

17  "permitted to consider daily living activities" in addressing a Plaintiff's subjective statements.

18  *Burch*, 400 F.3d at 681.  Daily activities "form the basis for an adverse credibility determination"

19  when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities

20  meet the threshold for transferable work skills.  *Orn*, 495 F.3d at 639; *see Molina*, 674 F.3d at

21  1112 (factors to consider in evaluating a claimant's statements include "whether the claimant

22  engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant

23  reports participation in everyday activities indicating capacities that are transferable to a work

24  setting").

25          Here, the ALJ identified Plaintiff's testimony about his limited ability to stand, sit, walk,

26  and engage in "daily activities."  (AR 30).  The ALJ assessed this testimony was inconsistent with

27  the record.  *Id*.  Specifically, the ALJ asserted Plaintiff's treatment records in 2019 demonstrated

28  he was able to walk one mile per day, although he rests afterward when he is tired.  *Id*.  The ALJ

1  contended Plaintiff did not use an assistive device in his November 2019 consultative

2  examination, despite claiming he used a cane in his hearing testimony.  *Id.*  Further, the ALJ

3  noted Plaintiff was capable of doing housework, yardwork, and exercising multiple times a week.

4  *Id.*  The ALJ determined Plaintiff's statements to his doctors in conjunction with the improvement

5  he experienced following his surgeries, supported "a finding that his abilities are greater than he

6  described at the hearing."  *Id.*

7        Plaintiff claims the ALJ erred because she made no findings on how long it took him to

8  walk one mile or whether he required rest breaks while walking.  (Doc. 17 at 37).  However, at no

9  point did Plaintiff testify how long it took him to walk any distance, or what rest breaks, if any, he

10  required.  *See generally* (AR 41-67).  Plaintiff only testified he could walk three-quarters of a

11  normal city block before he started to get back pain.  *Id.* at 48.  The ALJ properly discounted this

12  testimony by finding Plaintiff had stated he was able to walk up to one mile a day and three miles

13  a week.  *Id.* at 30.

14        The ALJ identified numerous other bases for discounting Plaintiff's testimony concerning

15  his physical limitations.  *See id.* (citing Plaintiff's use of a cane, ability to do housework,

16  yardwork, and exercise).  Plaintiff contends the ALJ failed to account that he made these

17  statements in April 2019, because "he was seeking medical authorization to work without

18  restriction due to the financial pressure of being off work for years."  (Doc. 17 at 37) (citing AR

19  54).  Plaintiff argues he should not be penalized for attempting to lead a normal life in the face of

20  his limitations.  *Id.* at 37-38 (citations omitted).  Plaintiff asserts, "[i]t is at least as likely that [he]

21  tried to work despite his symptoms, not because they were less severe than alleged."  *Id.* at 38.

22        Plaintiff appears to suggest the ALJ's use of Plaintiff's statements in April 2019 should be

23  disregarded because he had embellished his condition to his treating orthopedics.  However, if

24  the ALJ had known Plaintiff had exaggerated his condition in an effort to obtain medical

25  authorization to work without restriction, it merely would provide a separate basis to find Plaintiff

26  and his testimony not credible.  *See Smolen*, 80 F.3d at 1284 (the ALJ may consider numerous

27  factors in weighing a claimant's credibility including the claimant's reputation for lying, prior

28  inconsistent statements concerning the symptoms, and other testimony by the claimant that

appears less than candid).  Accordingly, the Court finds this argument is meritless.

The ALJ established with sufficient specificity the testimony she deemed not credible and the evidence that undermined said testimony.  Thus, the inconsistencies between Plaintiff's testimony and his daily activities constitute a clear and convincing reason to discount Plaintiff's symptom testimony.  *Molina*, 674 F.3d at 1112-13; *Valentine*, 574 F.3d at 693.  *Accord Whittier v. Kijakazi*, No. 20-56149, 2022 WL 542553, at *1 (9th Cir. Feb. 23, 2022) (ALJ permissibly discounted plaintiff's symptom testimony based in part on daily activities including performing light housework, preparing meals, driving, caring for a dog, grocery shopping, and taking walks).

Next, Plaintiff argues it was improper for the ALJ to disregard Plaintiff's statements regarding his limitations at earlier points in time based on a period of later improvement.  (Doc. 17 at 34-35) (citing *Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021)).  Specifically, Plaintiff asserts the ALJ erred in discounting Plaintiff's statements made on the March 19, 2019, Exertional Activities Questionnaire because they were made before his lumbar spine or bilateral hip surgeries.  *Id*. at 34.  Plaintiff claims that even if his pain improved for a period in 2019, it "does not render his statements regarding his pain and limitations from the alleged onset date of September 1, 2017, through the improved period in 2019 any less credible."  *Id*. at 35.

In *Smith*, the plaintiff alleged that as of December 2012, he could not work "due to mental health problems triggered by an acute grief reaction to the deaths of his fiancée, mother, and grandmother during a two-month period in fall 2012."  14 F.4th at 1110.[5]  The record showed that the intensity of the plaintiff's "symptoms varied substantially during the years following his alleged onset date and dramatically improved during the later years of the claimed disability period."  *Id*. at 1111-13.  On appeal, the Ninth Circuit held that substantial evidence supported the ALJ's finding that the claimant was not disabled at the time of the July 2018 hearing, but "nonetheless reverse[d] and remand[ed] . . . for further factfinding, since the ALJ did not adequately consider how [the plaintiff's] symptoms changed over time."  *Id*. at 1110-13.  The

---

[5] The Ninth Circuit has not limited its holding in *Smith* to mental health-related cases, and specifically, has applied *Smith* in a case involving post-onset back surgery.  *See Thompson v. Kijakazi*, No. 21-35152, 2022 WL 1239464, at *1 (9th Cir. Feb. 9, 2022).

Ninth Circuit noted that "[t]he ALJ ultimately discounted [the plaintiff's] testimony as not credible, concluding that it was inconsistent with the medical evidence." *Id.* at 1111.  The Ninth Circuit explained that "[t]his was error" because the ALJ's "conclusion rested on [her] assessment of [the plaintiff's] testimony regarding his functioning at the time of the [July 2018] hearing, and she did not analyze [the plaintiff's] testimony regarding his capacities in past years." *Id.*

Here, the ALJ recognized Plaintiff had pain in his back and hips in 2017.  (AR 28).  The ALJ noted Plaintiff significantly improved his pain and activity level following a course of injections.  *Id.*  The ALJ asserted in January 2018, Plaintiff felt substantially better with no leg pain and minimal back discomfort.  *Id.*  Thereafter, the ALJ noted Plaintiff had increased symptoms in his back and lower extremities that required surgical intervention in 2018.  *Id.*  The ALJ found Plaintiff experienced significant improvement in his pain and ability to function following his surgeries.  *Id.* at 28-30.

The ALJ's opinion reflects that Plaintiff was "not disabled" following improvement from the surgeries he underwent in 2018.  *Id.* at 28.  This finding permits an inference that before Plaintiff's "improvement," for a period of time, Plaintiff was unable to engage in substantial gainful activity.  The question, then, is whether the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony concerning his symptoms from the alleged onset date (September 1, 2017), to when Plaintiff's condition purportedly improved following surgical intervention (April 2019).  *Smith*, 14 F.4th at 1113; (Doc. 17 at 39).

In the March 19, 2018, Exertional Activities Questionnaire, Plaintiff described his pain symptoms and limitations.  (AR 221-23).  Plaintiff noted he could only stand sit or walk for a short amount of time.  *Id.* at 221.  Plaintiff reported his back and legs hurt when he drives, and does yardwork, housework, and chores.  *See Id.* at 221-22 ("my back [and] legs kill me").  Plaintiff asserted it takes him all week to complete a task, and he requires numerous rest periods during the day.  *Id.* at 222-23.

The ALJ discounted Plaintiff's March 19, 2018, statements.  *Id.* at 30.  The ALJ noted Plaintiff completed this form "before his lumbar spine or bilateral hip surgeries.  [The] limitations described on this form are not probative of the claimant's permanent or long-term abilities." *Id.*

1    Thus, the ALJ erred because she discredited Plaintiff's symptom testimony as a whole based on

2    Plaintiff's condition after multiple surgeries.  The ALJ failed to explain how his post-surgery

3    condition contradicted testimony about his symptoms from the alleged disability onset date

4    (September 1, 2017) until he recovered from his back and two hip surgeries. (April 2019).  (Doc.

5    17 at 39).

6          The facts of this case arguably warranted some consideration of whether Plaintiff might

7    have been eligible for a closed period of disability from his alleged disability onset date

8    (September 1, 2017), until he recovered from his back and two hip surgeries (April 2019).  (Doc.

9    17 at 39).  The Ninth Circuit has emphasized the importance of considering how a claimant's

10   symptoms change over time.  *See Smith*, 14 F.4th at 1116 (finding the ALJ "erred by seeking only

11   to reach a single disability determination for the entire multi-year period, thereby failing to

12   consider whether Smith was disabled for only a qualifying, early portion of that time.").

13         Here, the relevant period under review was three years, from Plaintiff's alleged disability

14   onset date of September 1, 2017, through the date of the ALJ's decision, September 30, 2020.

15   (AR 34).  Despite the ALJ finding that Plaintiff was not disabled at any point within that time,

16   Plaintiff argues the ALJ should have given additional consideration to whether he was disabled

17   during a discrete 12-month period within that three-year period.  (Doc. 17 at 38-39).

18         Specifically, Plaintiff asserts he had severe pain in his back and hips that radiated down

19   his legs from the alleged disability onset date of September 1, 2017.  *Id*. at 38.  Plaintiff contends

20   that from September 1, 2017, through, "at a minimum, April 2019, when [Plaintiff] reported

21   recovery from his second back fusion surgery," he was disabled.  *Id*. at 39.  Plaintiff avers the

22   ALJ's failure to consider whether a closed period of disability was warranted constitutes legal

23   error.  *Id*.

24         In contrast, Defendant argues the record does not support a finding of disability, even for a

25   closed period.  (Doc. 18 at 6).  Defendant contends Plaintiff has not cited "a single medical

26   provider, doctor or otherwise, who provided an opinion that even suggested that plaintiff was

27   disabled for this closed period of time."  *Id*.  Defendant also claims, "Plaintiff does not challenge

28   the ALJ's evaluation of any opinion or contend that they support his position" and that this Court

21

1    should defer to the ALJ's initial conclusion.  *Id*.

2          Defendant's first argument is not a correct statement of law.  Even if Plaintiff had not

3    provided a medical opinion that suggests he was disabled for a closed period of time, the lack of

4    objective medical findings, in and of itself, is not a clear and convincing reason to reject a

5    claimant's testimony.  *Vertigan*, 260 F.3d at 1049.  Defendant's second argument is unavailing.

6    The ALJ expressly acknowledged in her decision that Plaintiff's condition improved after he

7    underwent surgery on his back and two surgeries on his hips in 2018.  (AR 28).  The ALJ's

8    determination of non-disability following the 2018 surgeries supports Plaintiff's position that he

9    was disabled before such intervention took place.  *See Johnson v. Kijakazi*, No 21cv01284-NLS,

10    2022 WL 3362051, at *15 (S.D. Cal. Aug. 15, 2022) (rejecting Commissioner's argument that the

11    ALJ is only required to assess plaintiff's disability from his alleged onset date to the date he was

12    last insured, and remanding for the ALJ to determine whether plaintiff was disabled "for a

13    qualifying portion of the time from his alleged onset date, even if not for the full period").

14                        **V.**       **REMAND**

15          The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g)

16    or to order immediate payment of benefits is within the discretion of the district court.  *Harman v.*

17    *Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an

18    administrative agency determination, the proper course is to remand to the agency for additional

19    investigation or explanation.  *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16

20    (2002)).  Generally, an award of benefits is directed when:

21

22          (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
           (2) there are no outstanding issues that must be resolved before a determination of

23          disability can be made, and (3) it is clear from the record that the ALJ would be required
           to find the claimant disabled were such evidence credited.

24

25    *Smolen*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose

26    would be served by further administrative proceedings, or where the record is fully developed.

27    *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1998).

28          Here, the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's pre-

1  surgery statements.  As discussed above, remand is warranted for the ALJ to determine whether

2  Plaintiff was disabled for a closed period during the period beginning September 1, 2017.  *See*

3  *Smith*, 14 F.4th at 1113-14.

### VI.    CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

    1.   That the decision of the Commissioner is reversed and this matter is remanded for

        consideration of a closed period of disability beginning September 1, 2017; and

    2.   The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Charles

        Bingley Fryar and against Defendant Kilolo Kijakazi, Acting Commissioner of

        Social Security.

IT IS SO ORDERED.

Dated:   **September 25, 2023**                              _____

UNITED STATES MAGISTRATE JUDGE